UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

MAILCOUPS, INC. d/b/a SUPER
COUPS,
                              Plaintiff,

v.

WILLIAM WRIGHT, INC., WAYNE
LATHIM, and VINCENT W. HESSER,
                              Defendants.

CIVIL ACTION NO.

# 00CV10188GAO

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

### The Parties

1.     Plaintiff, MailCoups, Inc. ("MailCoups"), is a corporation organized and existing under the laws of the State of Delaware, having it principal place of business in Avon, Massachusetts and doing business as Super Coups.

2.     Defendant, William Wright, Inc. ("Wright"), is, upon information and belief, a corporation organized and existing under the laws of the State of Nevada, having its principal place of business in Las Vegas, Nevada.

3.     Defendant, Wayne Lathim ("Lathim"), is an individual who, upon information and belief, resides in Henderson, Nevada.

4.     Defendant, Vincent W. Hesser ("Hesser"), is an individual who, upon information and belief, resides in Las Vegas, Nevada.   Hesser is the president and resident agent of Wright.



1

## Jurisdiction

5.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States.  In particular, this action arises under the provisions of the Lanham Act, as amended by the Anticybersquatting Consumer Protection Act.  15 U.S.C. §§1114 and 1125 (a), (c) and (d).

6.      Jurisdiction is proper under 15 U.S.C. §1121, and 28 U.S.C. §§1331 and 1338(a).

## Venue

7.      Venue properly lies in this court pursuant to 28 U.S.C. §§1391(b) and (c) because Defendants are subject to personal jurisdiction in this judicial district and because a substantial part of the events giving rise to the cause of action occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

## Factual Background

8.      Since at least as early as February, 1981, MailCoups and its predecessors in interest have used the name and mark "Super Coups" in association with direct mail advertising services.

9.      MailCoups is the owner U.S. Service Mark Registration No. 1,386,255, dated March 11, 1986 for the mark "Super Coups" as applied to direct mail advertising services, said mark being assigned to MailCoups by the prior owner thereof on February 27, 1998.

2

10.     On or about September 25, 1998, Lathim and MailCoups entered into a franchise agreement ("the Agreement"), wherein Lathim became the owner of a Super Coups franchise in Nevada.

11.     The Agreement provides in part:

21.1     <u>Franchisee's Use of the Service Marks</u>:  Franchisee acknowledges that the Service Marks "SUPER COUPS MONEY-SAVING COUPONS FOR THE WHOLE FAMILY", "Super Coups", and related design's are owned by ADVO, Inc., which has licensed MailCoups to use them and license others to use them.  Franchisee's license to use and display these marks is limited as follows

21.1.1   Franchisee's right to use the Service Marks is derived solely from this Agreement and is limited to the conduct of business by Franchisee pursuant to and in compliance with this Agreement and applicable procedures, standards, specifications and operating methods MailCoups prescribes from time to time during the term of this Agreement.

* * *

21.1.4   Franchisee must use the Service Marks in identifying the Franchise business and must identify Franchisee as the independent  owner of an authorized Super Coups franchise.  Franchisee may not use the Service Marks as part of any corporate name or trade name or with any prefix, suffix or other modifying words, terms, designs, or other symbols other than logos licensed to th Franchisee, or in any modified form, nor may Franchisee use the Service Marks in connection with the performance of any sale of any unauthorized services or products or in any manner not expressly authorized in writing by MailCoups.

* * *

21.1.5   Franchisee may not use the Service Marks on the Internet in any manner, except through participation in  the Internet Program described in this Agreement, or as expressly permitted in writing by MailCoups.

3

12.   The Agreement further provides that :

34.1   Franchisee's Obligations Upon Termination or Nonrenewal.  In the event of termination or nonrenewal of this Agreement by MailCoups or Franchisee, Franchisee agrees to:

\* \* \*

34.1.3   Immediately cease to use any Service Mark, any colorable imitation thereof or any indication of a Super Coups franchise in any many or for any purpose or utilize for any purpose any trade name, trade or service mark or any other commercial symbol trhat suggests or indicates a connection or association with MailCoups or the Super Coups system.

\* \* \*

34.1.9   Pay to MailCoups all reasonable damages, costs and expenses, if any, including reasonable attorneys' fees incurred by MailCoups by reason of default on the part of the Franchisee, whether or not the expenses occurred prior to or subsequent to the termination of the Franchise, including all costs and expenses, if any incurred by MailCoups in obtaining injunctive relief to enforce the provisions of this Agreement.

13.   Subsequent to entering into the Agreement, disputes arose between Lathim and MailCoups and, by letter dated October 5, 1999, MailCoups terminated Lathim's franchise.

14.   In or about January, 2000, When the disputes were not resolved to his satisfaction, Lathim, together with Hesser and Wright, registered the domain name www.supercoups.org  and placed false and defamatory information about MailCoups at that site on the Internet.   Hesser and Wright apparently provided financial backing to Lathim's franchise with MailCoups, were angered by his failure and wanted their money back.

4

15.   By letter dated January 24, 2000, Lathim and Hesser wrote to

MailCoups and demanded payment of $35,000.00 in exchange for the rights to

the domain name www.supercoups.org.  Specifically that letter stated:

> The reason I am writing this letter to you is out of professional courtesy.  I
> am the COO  of a multi-million dollar company and realize what the impact
> is when a company screws up.  There can be tens or hundreds of
> thousands of dollars spent in time, energy, attorney fees, fines, etc., just to
> try to fight a claim; and eventually the company loses, even if it happens to
> prevails (sic) in a suit.  This I awsuit will need to be disclosed in your
> financial statements, to your banks, shareholders, franchise owners
> (current and future), and all other interested parties.  All Wayne is asking
> for now is his $35,000 back he paid for the franchise due to the violations
> by your company.  You have until Wednesday, February 2, 2000 to
> respond with an answer.  If you agree to provide the reimbursement of
> $35,000, he will agree not to pursue any legal action and turn over his
> rights to www.supercoups.org to your company.

16.   MailCoups has never consented to to the registration or use of the

domain name www.supercoups.org.

17.   By letter dated January 26, 2000, the Defendants were notified of

MailCoups' objection to their use of the mark "Super Coups" and the domain

name www.supercoups.org  and demand was made upon them to cease their

offensive conduct.

18.   The Defendants subsequently agreed to remove the offensive

content of their website, but did not otherwise agree to cease violating

MailCoups' mark.

19.   As of January 28, 2000, the Defendants had not removed the

content of the website.   Although they subsequently removed the content, they

have not ceased using the domain name and the website indicates that it

remains "under construction"

5

20.     As of January 28, 2000, the website indicated that entire content thereof is the copyrighted property of Wright. The website also indicated that the owner of the domain name is Wright and Lathim is listed as the appropriate contact person. Registration information available on the internet indicates that Hesser and/or Wright are the owners of the domain name.

**COUNT ONE**
**ANTICYBERSQUATTING CONSUMER PROTECTION ACT**
(15 U.S.C. §1125(d))

21.     Paragaraphs 1 through 20 are incorporated by reference as though fully set forth herein.

22.     MailCoups is the owner of the mark "Super Coups."

23.     Without regard to the goods or services of MailCoups, and with a bad faith intent to profit from the mark, the Defendants have registered and used a domain name that is identical or confusingly similar to or dilutive of said mark.

**COUNT TWO**
**FEDERAL SERVICE MARK INFRINGEMENT**
(15 U.S.C. §1114)

24.     Paragraphs 1 through 23 are incorporated by reference as though fully set forth herein.

25.     Defendants' use of the name and service mark "Super Coups" within www.supercoups.org is likely to cause confusion, or to cause mistake, or to deceive consumers as to the source of products and services being promoted by the Defendants, including a possible affilitation with or sponsorship by MailCoups. As such, Defendants' use of the name and mark "Super Coups" within www.supercoups.org constitutes infringement of Plaintiff's registered

6

service mark in violation of 15 U.S.C. §1114, all to the irreparable harm and detriment of Plaintiff.

**COUNT THREE**
**COMMON LAW SERVICE MARK INFRINGEMENT**
(15 U.S.C. §1125(a))

26.     Paragraphs 1 through 25 are incorporated by reference as though fully set forth herein.

27.     Defendants' use of the name and service mark "Super Coups" within www.supercoups.org is likely to cause confusion, or to cause mistake, or to deceive consumers as to the source of products and services being promoted by the Defendants, including a possible affiliation with or sponsorship by MailCoups.  As such, Defendants' use of the name and mark "Super Coups" within www.supercoups.org constitutes infringement of Plaintiff's registered service mark in violation of 15 U.S.C. §1125(a), all to the irreparable harm and detriment of Plaintiff.

**COUNT FOUR**
**DILUTION OF FAMOUS MARK**
(15 U.S.C. §1125(c))

28.     Paragraphs 1 through 27 are incorporated by referenced as though fully set forth herein.

29.     MailCoups' registered mark "Super Coups" is a famous mark within the meaning of 15 U.S.C. §1125(c).

30.     The Defendants are using MailCoups' famous mark for a commercial use in commerce and by such use dilution of MailCoups' mark "Super Coups" has occurred and will continue to occur.

31.    The Defendants willfully intended to trade and profit on MailCoups' reputation and to cause dilution of MailCoups' famous mark.

32.    Plaintiff requests that Defendants be preliminarily and permanently enjoined pursuant to 15 U.S.C. §1125(c)(1) from using the name and service mark "Super Coups," www.supercoups.org or any other name or mark which is confusing similar to Plaintiff's "Super Coups" mark.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that judgment be granted in its favor against the Defendants as follows:

A.    That this Court order, adjudge and decree that Defendants have infringed Plaintiff's registered service mark No. 1,386,255 in violation of 5 U.S.C. §1114;

B.    That this Court order, adjudge and decree that Defendants have infringed upon and diluted Plaintiff's mark in violation of 15 U.S.C. §§1116, 1125(c) and (d) a preliminary and permanent injunction issue prohibiting Defendants, their officers, agents, servants, attorneys, employees and all others in privity therewith from doing, abiding, causing or abetting any of the following:

(i)    using or infringing in any manner Plaintiff's registered mark "Super Coups," including any use of "Super Coups," www.supercoups.org or any variations thereof or any other name or mark which is likely to be confused with Plaintiff's "Super Coups" mark;

(ii)    using in any manner the name and mark "Super Coups," including any use of "Super Coups," www.supercoups.org or any variations thereof or any other name or mark which is likely to be confused with Plaintiff's "Super Coups" mark, in connection with Internet identification, domain name, advertising, text, operation or maintenance of any Internet site, or in communications over the Internet in relation to business activities, or in the provision of any services through the Internet; and

(iii)    otherwise engaging in acts or activities directly or indirectly calculated to trade upon Plaintiff's mark, or the reputation or goodwill of the Plaintiff, or in any manner unfairly competing with the Plaintiff.

C.    That this Court enter a preliminary and permanent injunction requiring the Defendants to take all actions necessary to transfer registration of the www.supercoups.org domain name, and any variations thereof , to the Plaintiff;

D.    That the Court award Plaintiff any actual damages which it may have incurred as a result of Defendants' wrongful activities, including, but not limited to, the amount of profits made by Defendant as a result of its wrongful activities, together with expenses, costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1117;

E.    That the Court award Plaintiff statutory damages together with expenses, costs and reasonable attorneys fees pursuant to 15 U.S.C. §1117;

F.    That the Court award Plaintiff expenses, costs and reasonable attorneys fees pursuant to the terms of the parties' agreement; and

G.    Such other and further relief as the Court may deem just under the circumstances.

                                    MAILCOUPS, INC.
                                    d/b/a SUPER COUPS,

                                    By its attorneys,

                                    _____
                                    J. Allen Holland, Jr., BBO #546892
                                    John R. Cavanaugh, BBO #558648
                                    LYNCH, BREWER, HOFFMAN & SANDS, LLP
                                    101 Federal Street, 22nd Floor
                                    Boston, MA  02110-1800
                                    (617) 951-0800

Dated:  February 1, 2000

103990_1.DOC